UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MELODY MORGAN

                        Plaintiff,

     -against-                      **COMPLAINT AND DEMAND FOR JURY TRIAL**
                                                 CASE NUMBER:

ALLIED INTERSTATE, INC.
                        Defendants.
------------------------------------------------------------ X

## PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA") and the New York General Business Law § 349.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court arises under 15 U.S.C § 1692k (d), 28 U.S.C § 1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C § 2201 and 2202. Venue in this District is proper under 28 U.S.C. § 1391(b) in that the Defendants transact business here and some of the conduct complained of occurred here.

## PARTIES

3.      Plaintiff, Melody Morgan, is a natural person residing in New York.

4.      Defendant, Allied Interstate, Inc. is a foreign corporation, with its principal place of business located at 12755 State Hwy, Ste 300 Plymouth, Minnesota, 55441.

5.      Defendant is engaged in the business of collecting debts in New York.

6.      The principal business purpose of Defendant is the collection of debts

using the mails and telephone, and Allied Interstate regularly attempts to collect debts alleged to be due another.

7. Defendant is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect consumer debts alleged to be due to another. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a (6).

## FACTUAL ALLEGATIONS

8. In or around April 17, 2011, Defendant Allied Interstate, Inc. ("Allied"), began dunning Melody Morgan ("Morgan") in New York with live calls and recorded messages demanding payment on a debt allegedly owed to Capital One.

9. Allied's calls to Morgan were incessant; calling her between 5 to 12 times a day - including Sundays - on both her home and cellular phones.

10. On or around April 22, 2011, Morgan hired an attorney to file bankruptcy for her, who agreed to represent her with respect to the alleged debt for which she was being dunned by Allied (the "alleged debt").

11. On or around April 28, 2011, Morgan gave Allied actual notice that she had hired an attorney to file bankruptcy for her and that the attorney was representing her with respect to the alleged debt. Morgan provided to Allied the attorney's name and phone number.

12. The attorney's name, address and phone number was also readily ascertainable.

13. The Allied representative then asked Morgan what bankruptcy chapter was going to be filed. Morgan told the representative that she did not yet know under

which bankruptcy chapter she would be filing.

14. The Allied representative told Morgan that she could not confirm representation unless Morgan told her what chapter bankruptcy she would be filing.

15. Thereafter, another representative of Allied received confirmation from Morgan's attorney that Morgan was being represented with respect to the alleged debt.

16. On or about July 28, 2011, notwithstanding the fact that Morgan had given actual notice to Allied that she was being represented by an attorney with respect to the alleged debt and the fact that Allied subsequently confirmed that representation, a representative of Allied who called herself "Amy" contacted Morgan again on her home phone and began dunning her for the alleged debt.

17. Morgan then asked Amy whether she was aware that Allied had already been given notice that Morgan was represented by an attorney with respect to the alleged debt, and that Amy therefore should not be contacting her.

18. Amy responded that she would "pass that information along to [her] supervisor" and followed by saying "but since I have you on the phone…" and then continued to dun Morgan for the alleged debt.

19. Morgan then asked Amy for a second time whether Amy was aware that she should not be contacting Morgan with respect to the alleged debt.

20. Amy again responded that she would "pass the information along to [her] supervisor" and again followed by saying to Morgan, "but since I have you on the phone…" as she continued to dun Morgan with respect to the alleged debt.

21. At no time after Allied's initial communication with Morgan, did Allied provide to Morgan a validation notice as defined in FDCPA 15 U.S.C. §1692g.

22. Upon information and belief, Allied caused one or more letters to be sent to Morgan on Capital One Services, LLC 's ("Capital One's") letterhead to be sent to Morgan listing Allied Interstate as servicer for an alleged debt with an account ending in "8692".

23. At some time after Allied's initial communication with Morgan, Morgan attempted to contact Capital One directly to discuss the disputed debt.

24. Upon information and belief, Morgan's calls to Capital One were re-routed to Allied without indicating as much to Morgan.

25. Upon information and belief, Allied routinely caused calls to Capital One to either be re-routed to Allied or used a technique known as "ID spoofing" without indicating as much to consumers.

26. In addition, during these calls, Morgan was forced to endure every few seconds for upwards of 20 minutes an automated message stating "we are debt collectors". The defendant intentionally caused consumers to endure such messages rather than provide assistance from an actual representative.

FIRST CLAIM FOR RELIEF

27. Plaintiff repeats and re-alleges and incorporates by reference the preceding paragraphs.

28. Defendant violated the FDCPA. Defendants' violations include, but are not limited to, the following:

29. Defendant violated 1692c(a)(a)(2) by communicating with the Plaintiff after knowing that she was represented by an attorney with respect to the debt.

30. Defendants violated 1692g(a) by failing to provide a validation notice

within 5 days after initial communication with Plaintiff.

31. Defendant violated 1692c(a)(1) by communicating with Plaintiff at unusual times that Defendant knew or should have known was inconvenient to Plaintiff.

32. Defendant violated 1692e(10) by misrepresenting to plaintiff that it could not confirm representation unless she told plaintiff what chapter bankruptcy she would be filing.

33. Defendant violated 1692e(14) by using Capital One's letterhead and rerouting Capital One's calls to itself using "ID spoofing" without indicating as much to plaintiff.

34. Defendant violated 1692e(2) by using unfair or unconscionable practices and attempting to collect amounts not authorized by agreement or permitted by law.

36. As a direct and proximate result of the above violations of the FDCPA, the Defendants are liable to the Plaintiff for declaratory judgment that defendants' conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, and attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

37. Plaintiff repeats and re-alleges and incorporates by reference the preceding paragraphs.

38. Defendants violated the New York General Business Law § 349 by engaging in acts of abusive, deceptive and unfair debt collection. Defendant's violations include, but are not limited to, the following:

39. Defendant violated the New York General Business Law § 349 by communicating with the Plaintiff after knowing that he was represented by an attorney

with respect to the debt

40. Defendant violated New York General Business Law § 349 by communicating with plaintiff at an unusual time that Defendant knew or should have known was inconvenient to Plaintiff.

41. Defendant violated the New York General Business Law § 349 by announcing to Plaintiff that it could not confirm representation unless plaintiff told defendant what chapter bankruptcy she would be filing.

42. Defendant violated New York General Business Law § 349 by engaging in caller ID spoofing, in violation of the Truth in Caller ID Act of 2009, which became effective December 2010. Under the FCC rules, an entity that "deliberately seeks to defraud, cause harm, or wrongfully obtain anything of value" from consumers as a result of caller ID spoofing may be subject to "up to $10,000.00 for each violation, or three times that amount for each day of continuing violation, to a maximum of $1 million for any continuing violation." Defendant's violation of the Truth in Caller ID Act of 2009 is also a violation of NYGBL § 349.

43. As a direct and proximate result of the above acts, the Defendants are liable to the Plaintiff for declaratory judgment that Defendants' conduct violated the NY GBL § 349 and Plaintiff's actual damages, statutory damages, and attorney's fees and costs.

THIRD CLAIM FOR RELIEF

44. Plaintiff repeats and re-alleges and incorporates by reference the preceding paragraphs.

45. Defendants with intent to defraud Plaintiff into making payment to

Defendants made a material false representation to Plaintiff that it could not confirm representation unless she indicated what chapter bankruptcy she was planning to file, upon which Plaintiff reasonably relied, causing damage to Plaintiff as a result of such reliance.

46. As a direct and proximate result of the above acts, the Defendants are liable to the Plaintiff for common law fraud and Plaintiff's actual damages and punitive damages.

## FOURTH CLAIM FOR RELIEF

47. Plaintiff repeats and re-alleges and incorporates by reference the preceding paragraphs.

48. Defendants breached their duty to provide accurate information in its efforts to collect by claiming that it could not confirm representation unless plaintiff indicated what bankruptcy chapter she intended to file, causing harm to Plaintiff.

49. As a direct and proximate result of the above acts, the Defendants are liable to the Plaintiff for declaratory judgment that Defendants' conduct was a negligent representation entitling Plaintiff to recover damages and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants for the following:

a. Declaratory judgment that Defendants' conduct violated the FDCPA and NY GBL § 349, and that Defendants engaged in common law fraud and negligent misrepresentation.

b. Actual and punitive damages.

    c.    Statutory damages pursuant to 15 U.S.C. § 1692k.

    d.    Statutory damages pursuant to NY GBL§ 349.

    e.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k and NY GBL§ 349.

    f.    For such other and further relief as may be just and proper.

Dated: October 21, 2011
       New York, NY

                Respectfully submitted,

                _____/sag/_____
                Steven A. Grant

                LAW OFFICES OF STEVEN A. GRANT
                Attorney For Plaintiff
                305 Broadway, Fl. 9
                New York, New York
                (212) 822-1451

<u>DEMAND FOR JURY TRIAL</u>

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

_____/sag/_____
STEVEN A. GRANT
Attorney for Plaintiff